UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| COOPER INDUSTRIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:16 CV 39 CDP |
| | ) | |
| SPECTRUM BRANDS, INC., | ) | |
| | ) | |
| Defendant/Counter Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| COOPER INDUSTRIES, LLC, et al., | ) | |
| | ) | |
| Counter Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

On September 12, 2019, I issued a Memorandum Opinion (Doc. 226) which

required Cooper to submit a proposed form of Judgment in accordance with the

Memorandum Opinion and the Court's prior summary judgment ruling.  (Doc.

158).  I provided Spectrum the opportunity to object to Cooper's proposed form of

Judgment and to provide an alternative proposed Judgment, which it did on

October 10, 2019.  (Doc. 228).  I ordered Cooper to respond to the issues raised in

Spectrum's objections and to address Spectrum's proposed alternative form of

Judgment, which it did on October 30, 2019. (Doc. 230). After full consideration of the parties' submissions, I will enter Judgment as follows.

At trial, I ruled that Spectrum was allocated 100 % of the response costs associated with the east side of the property. (Doc. 208). The difficulty in entering a judgment reflecting that ruling stems from the fact that, until my ruling at trial, the invoices submitted to the parties by Arcadis for the work being done at the property did not segregate costs by area (such as east side, west side, or building footprint, etc.). Once I issued my ruling, however, Arcadis began segregating those costs associated with the east side of the property. The total for work performed on the east side of the property since I issued my ruling and Arcadis began segregating those costs is $2,332.80, which amounts to 2.64% of the total costs billed during that time. Spectrum proposes that I apply that same percentage to allocate the past costs attributable to the east side, which would total $20,469.14.[1] Cooper disagrees with this approach and proposes instead that 26.7% of the total past costs should be allocated to the east side. Cooper arrived at its proposed percentage by submitting a document from Arcadis suggesting that

_____

[1] It appears that the parties are treating the segregated response costs attributed to the east side after the Court's ruling as future costs paid or payable solely by Spectrum, so the Court does not include $2,332.80 in its calculation of past costs.

26.7% of the past costs could be allocated to the east side based upon the number of soil samples and well borings on the east side. Importantly, this document does not reflect an analysis of past invoices to determine what work was actually performed on the east side of the property. Instead, it was created at the request of Cooper and reflects one of several different approaches suggested by the parties as a method for allocating costs.

I agree with Spectrum's argument that the Court should award past response costs attributable to the east side of the property as a percentage which is based on numbers reflecting actual work performed on the east side. The Court understands Cooper's argument with respect to the ways in which the work has evolved over time, but no party has submitted any evidence demonstrating what the actual east side costs were prior to the Court's ruling in January of 2019. Cooper's suggestion is simply too high and does not reflect the evidence introduced at trial. Arcadis's proposal of allocating 26.7% of the costs to the east side was simply one suggestion made at Cooper's request and is not based on any type of analysis of the actual past work performed. It also makes little sense to attribute such a significant percentage of the total past response costs to the east side given that the parties (and the regulatory agencies) have focused almost exclusively on remediation of the west, rather than the east, side of the property. In fact, the draft EE/CA Report

concluded that remediation on the east side is not even needed. While the Court understands that the EPA might not ultimately adopt this recommendation, it is still a reflection of how much (or in this case, how little) the east side contributes to the overall remediation costs at the property. Having considered all the evidence and the submissions of the parties, the Court concludes that it should allocate 2.64% of the total past costs to the east side, which results in a judgment that Spectrum is liable for $20,469.14 in past costs for the east side of the property, as well as all future costs associated with the east side.

After the post-trial briefs in this case were filed, Cooper and Spectrum each paid an additional $55,000.00 into the escrow account set up by the parties to fund the EE/CA at the Macon Site. Cooper has therefore paid $406,000.00 in response costs, while Spectrum has paid $948,144.46 in response costs. Total response costs for the Macon Site therefore equal $1,354,144.46. As previously determined, Spectrum cannot allocate the setoff amount of $480,000.00 and the past response costs for the east side in the amount of $20,469.14 to Cooper. Once these costs are deducted from the total response costs, $853.675.32 allocable response costs for the contamination of the west side and under the building footprint remain. Those remaining costs are allocable as follows: 96% ($819,528.31) to Spectrum, and 4% ($34,147.01) to Cooper. Cooper has therefore made an overpayment into the

escrow fund for past response costs in the amount of $371,852.99. As Cooper concedes that it owes Spectrum $115.21 in accrued interest before it made its first payment into the escrow account, the Court will deduct that amount from the total amount due to Cooper as overpayment into the escrow fund. The Court agrees with Cooper's argument that once that first payment was made, interest stopped accruing in Spectrum's favor. Thus, the total amount Spectrum owes Cooper to reflect its overpayment into the escrow fund will be reduced to reflect an interest credit in Spectrum's favor of $115.21. Spectrum therefore must reimburse Cooper $371,737.78 in overpayments into the escrow fund. Final Judgment will be entered herewith.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 20th day of November, 2019.